IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROME ENTERPRISES, INC., et al.,

                          Plaintiffs,

              v.                                    Civil Action No. 19-MC-00191-CFC

REBATH, LLC,

                          Defendant.

---

Richard L. Renck, DUANE MORRIS LLP, Wilmington, Delaware; Wayne A. Mack, J. Manly Parks, William Shotzbarger, Raymond A. Vanderhyden, DUANE MORRIS LLP, Philadelphia, Pennsylvania

          *Counsel for Plaintiffs*

Jason C. Jowers, Stephen B. Brauerman, Elizabeth A. Powers, BAYARD, P.A., Wilmington, Delaware; Jeffrey H. Wolf, Lauren Elliott Stine, Kristen M. Arredondo, QUARLES & BRADY LLP, Phoenix, Arizona

          *Counsel for Defendant*

**MEMORANDUM OPINION**

September 29, 2020
Wilmington, Delaware

*Colm F. Connolly*
COLM F. CONNOLLY
UNITED STATES DISTRICT JUDGE

Petitioners Rome Enterprises, Inc.; Koehler Family Enterprises, Inc.;

Koehler Partners, Inc.; Port City Baths, Inc.; and HD Solutions, LLC have filed

pursuant to § 9 of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, a petition to

confirm an arbitration award issued in their favor and against Respondent ReBath,

LLC. D.I. 1. The arbitration award granted Petitioners injunctive and declaratory

relief, damages for ReBath's breaches of certain franchise agreements, attorneys'

fees, and costs. Pending before me are Petitioners' motion to confirm the award,

D.I. 2, and ReBath's motion to vacate certain portions of the award, D.I. 9.

ReBath challenges the award only insofar as it affords certain injunctive and

declaratory relief to HD Solutions.[1] ReBath argues that the Arbitrator exceeded

the scope of his authority when he awarded that relief.

## I.   BACKGROUND

ReBath is the largest provider of residential bath remodeling services in the

United States. Petitioners are former ReBath franchisees. D.I. 1 ¶ 10.

---

[1] ReBath noted in its brief filed in support of its motion to vacate that it "does not challenge any portion of the [arbitrator's award] with respect to [Koehler Family Enterprises, Inc.; Koehler Partners, Inc.; and Port City Baths, Inc.]." D.I. 10 at 3 n.4. Although ReBath originally challenged a portion of the arbitrator's award that concerned Rome Enterprises, ReBath and Rome have since "agreed to fully settle and resolve all claims of any kind against each other." D.I. 20 at 1.

HD Solutions and ReBath entered into a franchise agreement in 2016.  The franchise agreement gave HD Solutions a license to use ReBath's business system and marks, including ReBath's trademarks and logo.  The agreement contained certain post-termination obligations.  Section 25(A) of the agreement, for example, provided that upon "any termination" of the agreement HD Solutions "shall immediately discontinue the use of any . . . Marks" and "turn over" to ReBath any "confidential and proprietary materials or information" belonging to ReBath.  D.I. 4-1 at 59.

The agreement included in Section 32(D) a mandatory arbitration clause that reads in relevant part:

> Except as provided in Section 32.E. and 32.F., all claims, controversies, and disputes arising out of or related to this Agreement must be submitted to arbitration administered by the American Arbitration Association (*"AAA"*) in accordance with the provisions of its Commercial Arbitration Rules (the *"Rules"*) . . . .  The arbitrator may make any award or awards or enter such order or orders, including an injunction or specific performance, as may be deemed appropriate by the arbitrator, but shall have no authority to award punitive or exemplary damages or to declare any Mark generic or otherwise.

D.I. 4-1 at 66 (emphasis in original).  Section 32(E) of the agreement, titled "Excepted Disputes," provided that "[t]he following disputes will not be resolved through arbitration" without ReBath's consent:

2

(i) disputes that arise under or are related to the Lanham Act, as now or later amended;

(ii) disputes that otherwise relate to the ownership or validity of any of the Marks or any other elements of the System;

(iii) disputes that involve enforcement of [ReBath's] intellectual property rights or protection of the Confidential Information; or

(iv) disputes related to the payment of sums Franchisee owes [ReBath] or its Affiliates.  Any litigation under this subsection will be filed exclusively in the United States District Court for the district in which [ReBath] has its principal place of business at the time of filing, and Franchisee irrevocably consent to this court's jurisdiction over Franchisee.

D.I. 4-1 at 66–67.

In March 2018 Petitioners filed a Statement of Claim with the AAA to initiate arbitration proceedings.  *See* D.I. 4-2.  Petitioners requested among other things in the Statement of Claim "injunctive and declaratory relief, an award of damages[,] and an order permitting [Petitioners] to terminate their Franchise Agreements due to ReBath's material breach of [multiple provisions of] those agreements."  D.I. 4-2 ¶ 6.

After a year of arbitration—which included a three-day hearing and hundreds of pages of pre- and post-hearing submissions—the Arbitrator found in favor of Petitioners in a 29-page Interim Decision dated April 25, 2019.  D.I. 1 ¶¶ 15–19.  Relevant to the pending motions, the Arbitrator ruled in the

3

Interim Decision that "based on" ReBath's breaches of certain provisions in the franchise agreement,

> HD Solutions would be permitted to terminate its franchise agreements. In the event HD Solutions elects to exercise this right, the [franchise agreement] shall be deemed null and void and the post-termination obligations, including the non-compete covenant in Section 26(C) of the [franchise agreement] shall not bind, or be enforceable against, HD Solutions. . . . ReBath must completely divest to Claimants: (1) all ownership rights to HD Solutions' Facebook, Google Places, Google Rankings, Angie's List, Houzz, and Yelp pages; and, (2) HD Solutions' customer lists.

D.I. 4-4 at 35. The Arbitrator also ruled that ReBath had breached the franchise agreements by requiring Petitioners to purchase certain bath products and that his final award would prohibit Petitioners from designating bath products that Petitioners must offer to their customers.

Within two weeks of the Interim Decision, in a detailed, ten-page, single-spaced letter, ReBath requested that the Arbitrator clarify and reconsider his ruling. D.I. 12-16. ReBath argued among other things in its letter that "[i]t [was] contrary to Arizona law for the Arbitrator to award compensatory damages, 'grant termination' and nullify post-termination obligations under these circumstances." D.I. 12-16 at 9. ReBath also argued that the Arbitrator's rulings that ReBath had breached the franchise agreements by requiring Petitioners to purchase certain bath products and that the final award would

4

prohibit ReBath from continuing to insist that Petitioners offer those products

to customers "exceed[ed] the Arbitrator's authority." D.I. 12-16 at 3.  ReBath

did not, however, argue or suggest that the Arbitrator had exceeded his

authority when he granted HD Solutions the right to terminate the agreement;

nor did ReBath argue that the Arbitrator had exceed his authority when he

declared that if HD Solutions exercised that right the franchise agreement

would be rendered null and void and HD Solutions would be relieved of its

post-termination obligations.  On the contrary, ReBath asked in its letter that

the Arbitrator provide "clarification regarding the scope of HD Solutions' right

to terminate" in the event "the Arbitrator declines to modify its Interim

Decision on HD Solutions' [breach of contract] claim and the appropriate

remedy." D.I. 4-3 at 5.  ReBath explained the clarification it sought as follows:

> First, the Interim Decision states, *without any limitation,* that the [franchise agreement] terminates "[i]n the event that HD Solutions elects to exercise this right . . . ." (Interim Decision at 28.)  Does this "right" have an expiration date?  Or is HD Solutions permitted to continue operating as a franchisee and profiting from the ReBath marks, name, and goodwill for as long as it wants before exercising this "right"?  What if HD Solutions chooses to continue operating as a franchisee for several months and then commits an Event of Default that entitles ReBath to terminate—do the post-termination obligations apply in that event?  ReBath seeks clarification on each of these issues.

> Second, the Interim Decision broadly states that, if HD Solutions elects to terminate the [franchise agreement], "the post-termination obligations . . . shall not bind, or be enforceable against, HD Solutions." (Interim Decision at 28.) ReBath requests that the Arbitrator clarify this ruling to reflect that HD Solutions remains bound by the post-termination obligations set forth in Section 25(A) to "immediately discontinue the use of any of the Marks or the System, turn over to the Company the Manual on loan to Franchisee and any other confidential and proprietary materials or information of the Company, and discontinue operating in any manner that might tend to give the public the impression that Franchisee is still a Franchisee of, or affiliated in any way with, the Company." In a similar vein, ReBath seeks clarification regarding the ruling that ReBath must turn over ownership rights to HD Solutions' Facebook, Google Places, Google Rankings, Angie's List, Houzz, and Yelp pages, because each of those pages bears ReBath's name and Marks. And, in any event, the [franchise agreement] does not convey to HD Solutions 100% ownership rights in customer accounts or these advertising materials, upon termination.

D.I. 12-16 at 10 (emphasis in original).

In an order issued on May 30, 2019, the Arbitrator directed HD Solutions to make its election to terminate the franchise agreement by no later than June 30, 2019 and granted ReBath's request to "affirm[ ] the validity" of HD Solutions's post-termination obligations under Section 25(A). D.I. 4-3 at 5; D.I. 10 at 7. The Arbitrator denied ReBath's remaining requests for clarification and reconsideration. D.I. 4-3 at 2, 6.

The Arbitrator issued his Final Award on July 25, 2019. The Arbitrator expressly incorporated his Interim Decision in the Final Award. D.I. 4-4 at 2. He also reiterated that "in accordance with the May 30, 2019 Order on ReBath's Request for Reconsideration, HD Solutions must make its election on its right to terminate" the franchise agreement no later than June 30, 2019. D.I. 4-4 at 3. The Arbitrator then ruled as follows:

> Accordingly, if HD Solutions elects to terminate, the [franchise agreement] will therefore be ordered null and void, and the post-termination obligations, including the post-termination noncompete covenant in Section 26(C) of the [franchise agreement] shall not bind, or be enforceable against, HD Solutions. HD Solutions will immediately discontinue the use of the Marks or System, will turn over to ReBath the System Manual and any other confidential and proprietary materials of ReBath, and will no longer operate under the name "Re-Bath" or "Re-Bath of San Antonio." HD Solutions will remove the Marks from all signage, vehicles, online listings, and all other sources within 30 days after receiving ownership rights to its customer database/list from ReBath.

> * * * *

> ReBath must immediately and completely divest to HD Solutions: (1) all ownership rights to HD Solutions' Facebook, Google My Business and Google Places, Angie's List, and Houzz pages, and YouTube channel (and its content) at https://www.youtube.com/user/rebathsanantonio; (2) all ownership rights to phone numbers associated with the HD Solutions business . . . [and] (3) HD Solutions' customer lists/database and any and all customer reviews.

7

D.I. 4-4 at 3–4.  HD Solutions terminated the franchise agreement on June 19, 2019.

## II.  LEGAL STANDARDS

The court's "function in confirming or vacating a commercial [arbitration] award is severely limited." *Mut. Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co.*, 868 F.2d 52, 56 (3d Cir. 1989) (alteration in original) (quoting *Swift Indus., Inc. v. Botany Indus., Inc.*, 466 F.2d 1125, 1130 (3d Cir. 1972)). "[T]o disturb an arbitrator's award a court must overcome a strong presumption in favor of the award." *Newark Morning Ledger Co. v. Newark Typographical Union Local 103*, 797 F.2d 162, 165 (3d Cir. 1986).  "This strict standard means that a reviewing court will decline to sustain an award 'only in the rarest case.'" *Id.*

A district court may vacate an arbitration award under § 10(a)(4) of the Federal Arbitration Act "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).  A party seeking relief under this provision "bears a heavy burden." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013).  As the Court held in *Sutter*:

> "It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error." Because the parties "bargained for the arbitrator's construction of their agreement," an arbitral decision "even arguably construing or applying the contract" must stand, regardless of a court's view of its (de)merits.  Only if "the arbitrator

8

act[s] outside the scope of his contractually delegated authority"—issuing an award that "simply reflect[s] [his] own notions of [economic] justice" rather than "draw[ing] its essence from the contract"—may a court overturn his determination. So the sole question for us is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong.

*Id.* (citations omitted) (alterations in original).

## III. DISCUSSION

ReBath argues that the Arbitrator lacked the authority to "invent[ ] and award[ ]" to HD Solutions three "post-termination rights" and also to declare the franchise agreement null and void and "erase" HD Solutions's post-termination obligations under the agreement. D.I. 15 at 2.

### A. HD Solutions's Post-Termination Rights

ReBath identifies the three post-termination rights "invent[ed] and award[ed]" by the Arbitrator as follows:

> (i) the right to use and infringe on the RE-BATH® trade name and trademarks (the "RE-BATH Marks") for an extra 30 days following termination; (ii) "ownership" rights to various websites, phone numbers, customer reviews, and other materials that are affiliated with the RE-BATH Marks; and (iii) exclusive rights to the confidential, proprietary and trade secret customer list/database, which is expressly defined in the franchise agreement as the shared property of the parties.

D.I. 15 at 2. ReBath argues that the "Excepted Disputes" provision in Section 32(E) of the franchise agreement "expressly excludes from arbitration all disputes

9

relating to" these rights absent ReBath's consent and that "ReBath never consented

to arbitrate any issues associated with its confidential information, Marks[,] or

intellectual property." D.I. 10 at 10.

As an initial matter, the Arbitrator did not award HD Solutions "the right to

use and infringe on the RE-BATH® trade name and trademarks (the "RE-BATH

Marks") for an extra 30 days following termination." On the contrary, the

Arbitrator expressly ruled that "HD Solutions will immediately discontinue the

use of the Marks or the System, will turn over to ReBath the System Manual and

any other confidential and proprietary materials or information of ReBath, and

will no longer operate under the name 'Re-Bath' or 'Re-Bath of San Antonio.'"

D.I. 4-4 at 4. ReBath seizes on the sentence that immediately follows this express

ruling in the Arbitrator's Final Award. That sentence reads: "HD Solutions will

remove the Marks from all signage, vehicles, online listings, and all other sources

within 30 days after receiving ownership rights to its customer database/list from

ReBath." D.I. 4-4 at 4. But this sentence must be read in context, and specifically

in light of the sentence that immediately precedes it. Read in that context, the

challenged sentence did not give HD Solutions "the right to use and infringe"

ReBath's marks for 30 days. Rather, the Arbitrator was recognizing in this

sentence the practical reality that the removal of marks from signage, vehicles,

and online listings is not something that occurs instantaneously; and thus to give

10

full effect to the Arbitrator's express ruling that HD Solutions "immediately discontinue" the use of ReBath's marks, the Arbitrator reasonably set a deadline by which HD Solutions would have to complete the removal of marks from its marketing materials.

It is also not clear from the record that the websites, telephone numbers, customer lists and databases in question constitute ReBath's intellectual property and confidential information, let alone whether disputes about those materials would fall under the franchise agreement's excepted disputes clause in Section 32(E) as opposed to the mandatory arbitration clause in Section 32(D). But in any event, I need not resolve whether the Arbitrator's rulings on these matters fell under Section 32(D) or Section 32(E). Assuming for the sake of argument that the rulings were issued pursuant to Section 32(E), the Arbitrator had authority to issue them because ReBath gave its consent for the Arbitrator to do so.

ReBath consented in the first instance by participating in the Arbitration and not objecting to the Arbitrator's authority to terminate the franchise agreement. Petitioners expressly requested in their Statement of Claim an order permitting them to terminate their respective franchise agreements. ReBath never challenged (and still does not challenge) the Arbitrator's authority to issue such an order. The dispute, as the Arbitrator saw it, was not about ReBath's intellectual property; it was about whether the franchise agreement should be terminated and, if so, how to

11

effectuate that termination. The Arbitrator's rulings regarding the removal of marks from HD Solutions's marketing materials and the post-termination ownership of websites, phone numbers, customer reviews, and customer lists and databases were ancillary rulings necessary to give effect to the Arbitrator's termination ruling. It is at the very least arguable that these ancillary rulings were about terminating the franchise agreement and not about ownership of ReBath's intellectual property. Accordingly, I cannot say that the Arbitrator exceeded the bounds of his contractual authority when he issued these rulings. *See Sutter*, 569 U.S. at 569 (noting that the "sole question" in determining whether "the arbitrator act[s] outside the scope of his contractually delegated authority" is "whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong").

ReBath's request that the Arbitrator reconsider his Interim Decision confirms that ReBath consented to the Arbitrator's authority to issue the challenged rulings regarding HD Solutions's post-termination rights. The Arbitrator ruled in the Interim Decision that HD Solutions had the right to terminate the franchise agreement and that if it chose to exercise that right the agreement would become null and void and HD Solutions would be relieved of its post-termination obligations. The Arbitrator also ruled that ReBath must "completely divest" to HD Solutions any ownership rights in the disputed websites

and customer lists.  Not only did ReBath not argue or suggest in its reconsideration request that the Arbitrator had exceeded his authority in making these rulings; ReBath asked the Arbitrator to clarify the rulings, thus implicitly acknowledging that the Arbitrator had the authority to make them.  The fact that ReBath argued in its reconsideration request that the Arbitrator's issuance of two other rulings "exceed[ed] the Arbitrator's authority," D.I. 12-16 at 3, further confirms that ReBath consented to the Arbitrator's issuance of the post-termination rights rulings ReBath challenges in this court.

### B.   HD Solutions's Post-Termination Obligations

ReBath argues that though "the parties submitted to arbitration the question whether HD Solutions would have the option to terminate, they did not arbitrate the validity of the parties' post-termination obligations." D.I. 15 at 2 (emphasis omitted).  But here again, to the extent the Arbitrator made rulings about HD Solutions's post-termination obligations, those rulings were at least arguably ancillary to and necessary to effectuate the Arbitrator's ruling that HD Solutions could terminate the franchise agreement.  For that reason, I cannot say that the Arbitrator acted outside his contractually delegated authority. *See Sutter*, 569 U.S. at 569.

Here, too, ReBath's argument that the Arbitrator lacked the requisite authority to rule on HD Solutions's post-termination obligations is directly

contradicted by ReBath's request for reconsideration of the Interim Decision. ReBath expressly asked the Arbitrator in that request to "clarify [ ]his ruling to [make it] reflect that HD Solutions remains bound by the post-termination obligations set forth in Section 25(A)" of the franchise agreement.  D.I. 12-16 at 10.  The Arbitrator made this clarification and ReBath understandably has not challenged the clarification or the Arbitrator's authority to make it.

## IV.  CONCLUSION

For the foregoing reasons I will deny ReBath's motion to vacate.

The Court will issue an order consistent with this Memorandum Opinion.

14